

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

December 1, 1958

Honorable Robert S. Calvert
Comptroller of Public Accounts
Capitol Station
Austin, Texas

Opinion No. WW-528

Re: Are the institutions under the
Board for Texas State Hospitals
and Special Schools required to
deposit all receipts collected
under Article 3196a in the State
Treasury instead of depositing
the receipts into a local bank
and later clearing the receipts
into the State Treasury?

Dear Mr. Calvert:

In your letter of June 19, 1958, you requested our
opinion concerning collections from non-indigent patients by
the Board for Texas State Hospitals and Special Schools. You
ask two questions which we shall answer in the order they were
presented.

"1. Are the institutions under the Board
for Hospitals and Special Schools required to
deposit all receipts collected under Article
3196a in the State Treasury instead of deposit-
ing the receipts into a local bank and later
clearing the receipts into the State Treasury?"
(Emphasis added).

Your request indicated that the funds involved were
pre-paid reimbursement expenses collected under Article 3196a,
Vernon's Civil Statutes, which are currently being handled by
the various institutions in a revolving fund account carried on
deposit at local banks. It seems that all collections from pay-
ing patients, including pre-paid expenses, are so deposited, and
at the end of a certain period the total charges (i.e., expenses
of these same patients) are charged against this account. The
amount so charged is then sent to the State Treasury, represent-
ing expenses earned by the State.

The funds in question are collected under Article
3196a, Vernon's Civil Statutes, which reads ir part as follows:

"Section 1.  Patients admitted to State hospitals and State psychopathic hospitals shall be of two classes, to wit:

"Indigent patients;

"Non-indigent patients;

"Indigent patients are those who possess no property of any kind nor have anyone legally responsible for their support, and who are unable to reimburse the State.  This class shall be supported at the expense of the State.

"Non-indigent patients are those who possess some property out of which the State may be reimbursed, or who have someone legally liable for their support.  This class shall be kept and maintained at the expense of the State, as in the first instance, but in such cases the State shall have the right to be reimbursed for the support, maintenance, and treatment of such patients."

This Article provides for reimbursement of expenses incurred by non-indigent patients.  When such reimbursements are made to eleemosynary institutions, the money so collected, since it belongs to the institution or State, is to be handled in accordance with Article 3179, Vernon's Civil Statutes, which provides as follows:

"All funds of every character received by or belonging to the institutions, other than money appropriated for their support from time to time by the Legislature, shall <u>as soon as received</u>, be paid over to the State Treasurer by the Board, superintendent or other person receiving them.  The Treasurer shall place such sums to the credit of the general revenue fund."  (Emphasis added).

Such Article is a general statute relating to funds received by or belonging to the institution in question.

In the correspondence between the Comptroller and the Board for Texas State Hospitals and Special Schools attached to your opinion request, the Board raised a question in defense of their using a special bank account for funds collected as prepaid reimbursement expenses.  We quote from the Board's letter to the Comptroller dated June 6, 1958:

"In light of the provisions of Article
3196a, it is our opinion that funds received
by the institution which have not been <u>earned</u>
is not 'public money' as that term is used in
Articles 87 and 98 of Vernon's Penal Code."

Article 4388, Vernon's Civil Statutes, reads in part
as follows:

"Art. 4388.  <u>DAILY STATEMENT FROM DEPART-
MENTS</u>

"The State Treasurer shall receive daily
from the head of each Department, each of whom
is specifically charged with the duty of making
same daily, a detailed list of all persons remit-
ting money the status of which is undetermined or
which is awaiting the time when it can finally be
taken into the Treasury, together with the actual
remittances which the Treasurer shall cash and
place in his vaults or in legally authorized de-
pository banks, if the necessity arises.  The
report from the General Land Office shall include
all money for interest, principal and the leases
of school, university, asylum and other lands.
. . . As soon as the status of money so placed
with the Treasurer on a deposit receipt is deter-
mined, it shall be transferred from the suspense
account by placing the portion of it belonging to
the State in the Treasury by the issuance of a
deposit warrant, and the part found not to belong
to the State shall be refunded.  . . ."

In Attorney General's Opinion O-945, January 15, 1940,
construing Article 4388, Vernon's Civil Statutes, the following
language appears:

". . . The purpose of the Suspense Statutes
is to provide a method whereby money may be paid
to the State which will not be paid into the State
Treasury until it is finally determined to whom the
money belongs, or until a time when the same may be
finally paid into the State Treasury.  The Suspense
Fund serves as a sort of a depository.  . . ."

Thus, the Legislature manifests its intent that all
funds other than those specifically excepted by law be paid
over to the State Treasury.  In this way all funds received by
any institution here under consideration pursuant to Article

3196a (for maintenance, care and treatment of patients) are governed by Article 3179, Vernon's Civil Statutes, which requires that such funds "shall as soon as received, be paid over to the State Treasurer by the Board, superintendent, or other person receiving them." Where the status of any such funds is underlined as to ownership, Article 4388, Vernon's Civil Statutes, requires that:

"The State Treasurer shall receive daily from the head of each Department, each of whom is specifically charged with the duty of making same daily, a detailed list of all persons remitting money the status of which is undetermined or which is awaiting the time when it can finally be taken into the Treasury, . . ." (Emphasis added).

You are therefore advised that the answer to your first question, namely, whether the Board for Texas State Hospitals and Special Schools is required to deposit all receipts collected under Article 3196a in the State Treasury, is in the affirmative.

Your second question was stated as follows:

"If you answer question one in the affirmative, then answer question two.

"2. Has there been an Attorney General's Opinion written overruling Attorney General's Opinion dated September 14, 1931?"

We find no opinion that has overruled the opinion dated September 14, 1931.

## SUMMARY

The institutions under the Board for Texas State Hospitals and Special Schools are required to deposit all receipts collected under Article 3196a into the State Treasury.

Respectfully submitted,

WILL WILSON
Attorney General of Texas

By Jot Hodges, Jr.
Jot Hodges, Jr.
Assistant

JH:ci:mg:wb

APPROVED:

OPINION COMMITTEE

Geo. P. Blackburn, Chairman
Wallace Finfrock
Richard B. Stone
B. H. Timmins, Jr.

REVIEWED FOR THE ATTORNEY GENERAL

BY:    W. V. Geppert